UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VICKI M. AKEN,

Plaintiff,

07-CV-6253

v.

**DECISION AND ORDER**

XEROX CORPORATION, LAWRENCE M. BECKER, XEROX CORPORATION RETIREMENT INCOME GUARANTEE PLAN ADMINISTRATOR and XEROX CORPORATION RETIREMENT INCOME GUARANTEE PLAN,

Defendants.

## INTRODUCTION

Plaintiff Vicki M. Aken ("plaintiff" and/or "Aken") brings this action against defendants Xerox Corporation ("Xerox"), Lawrence M. Becker ("Becker"), Xerox Corporation Retirement Income Guarantee Plan Administrator ("Plan Administrator"), and Xerox Corporation Retirement Income Guarantee Plan ("RIGP") (collectively referred to as "Defendants"), seeking recovery of disputed pension benefits.[1] Specifically, Aken alleges that she sustained losses with respect to retirement benefits allegedly due to her under Xerox's RIGP. Aken states that she relied upon the alleged misrepresentation by Defendants of benefits available to her

[1]Plaintiff originally brought a state court action against Defendants for negligent misrepresentation. Defendants filed a notice of removal arguing that Aken's complaint related to an employee benefit plan which was within the scope of the Employee Retirement Income Security Act ("ERISA"), and was therefore, a federal question to be decided by the Federal Courts. In response to the notice of removal, Aken brought a motion to remand arguing that her claim is founded solely on New York state law, and thus deprives this Court of subject matter jurisdiction. Upon review of the papers, the Court denied plaintiff's motion to remand.

because of her participation in Xerox's Voluntary Reduction in Force ("VRIF"). Further, plaintiff alleges that Defendants are estopped from claiming clerical error based on the documents reviewed by plaintiff.

Defendants move this Court for an Order pursuant to Fed. R. Civ. P. 56 granting the Defendants' Motion for Summary Judgment[2] and dismissing the Second Amended Complaint in its entirety. Defendants argue that there is no genuine issue of material fact for trial and the Defendants are entitled to judgment pursuant to Rule 56. For the reasons that follow, Defendants motion is granted and plaintiff's Second Amended Complaint is dismissed.

It is important to note that plaintiff and her counsel never filed her Second Amended Complaint with the Court in contravention of Fed. R. Civ. P. 5(d)(1), Local Rule 7.1(a) and Magistrate Judge Payson's August 9, 2007 Scheduling Order. The Court, however, was able to obtain a copy of the Second Amended Complaint and upon its review, it appears that plaintiff served Defendants with the Second Amended Complaint on or about September 6, 2007. Rule 5(d)(1) states that "Any paper after the complaint that is required to be

---

[2]The Court deemed the motion submitted without oral argument on June 18, 2008. In addition, the Court informed the parties that response and reply papers shall be filed in accordance with Local Rule 56.1(e). On June 10, 2008, Defendants filed a "Reply Memorandum of Law in opposition to Plaintiff's Cross-Motion for Summary Judgment and in further support of defendants' Motion for Summary Judgment[.]" However, the plaintiff never filed a Notice of Cross-Motion with the Court together with a memorandum of law and statement of undisputed facts pursuant to Local Rule 56.1(a). As a result of plaintiff's failure to follow the Local Rules, by Order dated June 18, 2008, this Court informed the parties that it would only consider the Defendants' Motion for Summary Judgment and supporting documents. In addition, the Court informed plaintiff that if she wishes, she may seek leave from this Court to file her Cross-Motion for Summary Judgment and the Court will consider plaintiff's request. To date, plaintiff has not sought leave from the Court.

served–together with a certificate of service–must be filed within a *reasonable time after* service." See Fed. R. Civ. P. 5(d)(1) (emphasis added). It is clear that plaintiff has committed a procedural error, which to date she has not attempted to correct.

**BACKGROUND**

Plaintiff was originally hired by Xerox in November of 1970. However, plaintiff separated from her employment on January 2, 1975. She was rehired by Xerox three years later on October 2, 1978 and continued to work at Xerox until she elected to retire. During the course of her employment, plaintiff was a participant in the RIGP, a defined benefit plan governed by ERISA. Upon being hired, employees are provided with a copy of a Summary Plan Description ("SPD") of the RIGP. Both the SPD and the RIGP provide that the method of calculating an employees' retirement benefits is based upon the average of an employee's five highest-paid calendar years with Xerox and an employee's years of service. In addition, the RIGP states that in determining years of participation, "periods of employment which terminated prior to January 1, 1976 shall be ignored." Further, the SPD and the RIGP also state that an employee will only receive credit for "up to 30" years of service. Accordingly, based upon the terms of the RIGP, at the time of plaintiff's retirement, she was entitled to receive a pension benefit based upon 27 years of service following her date of rehire.

Xerox advised all XNA Marketing and Teleweb Employees in the United States, including plaintiff, on October 25, 2005 about a VRIF program. The VRIF provided participating employees with a certain number of weeks of salary continuance. It also contained a schedule that explained that the amount of salary continuance was dependent upon an employee's credited years of service. However, under Xerox's policy, for an employee who separates from Xerox before January 1, 1976 and is then rehired, that employee's years of service "for all service related benefits," including vacation and salary continuance, is based upon their actual years of service following rehire.

Plaintiff continued to work for Xerox until January 28, 2006, when she went on salary continuance, electing to participate in Xerox's VRIF. Plaintiff elected to participate in the VRIF by signing a Request to Participate and General Release on November 30, 2005. The request was granted on December 14, 2005. Prior to electing to participate in VRIF, plaintiff alleges she logged onto a website run by Hewitt Associates to determine the amount of pension benefits she would receive. Plaintiff further alleges that she received an estimate which erroneously included her pre-1976 employment with Xerox and indicated she had a total of 32 years of service, for which she would be eligible for a lump sum pension

benefit totaling $296,536.21.[3] Notably, all printouts were labeled "estimate" in bold face type, and further note that "changes in earnings, service, investment performance, pension payment start date, beneficiary designation, or other factors could cause a difference in the actual benefit you receive."

Under the terms of the VRIF, plaintiff was entitled to receive one and a half weeks of pay for each year of service and other benefits in exchange for a release of all claims under state and federal law against Xerox, including claims brought under ERISA. Based on Xerox's policy, employees who terminate before January 1, 1976 were treated as new hires should they be rehired at a later date. As a result, on January 27, 2006, plaintiff was awarded 40.5 weeks of salary continuance, based on her 27 years of service following her date of rehire. In exchange for salary continuance and other VRIF benefits, plaintiff was obligated to and did sign a release. By signing the release, plaintiff agreed to waive all claims under state and federal law against Xerox, including claims brought under ERISA.

On January 31, 2006, the Plan Administrator determined that plaintiff's employment from November 1970 to January 1975 was incorrectly included in previous years of service estimates. On February 6, 2006, the Xerox Benefits Center contacted plaintiff to

[3]This estimate was in direct contradiction to the terms the SPD provided to the plaintiff, which states that years of service terminated before 1976 are not to be included in retirement benefit calculations and that employees will only receive credit for up to 30 years of service.

alert her to the fact that the previous estimates she had been given were incorrect and that any future calculations would properly reflect only her 27 years of service. Plaintiff did not run any further estimates until September 28, 2006, when she initiated her retirement, at which time her lump sum of payment was correctly determined to be $242,401.05. Plaintiff claims that she is entitled to pension benefits based upon an additional five years of service as well as an additional 11.5 weeks of salary continuance in accordance with VRIF, since her pension benefit estimates indicated that she had 32 years of service.[4] Plaintiff bases her claims on allegations that Xerox has made negligent misrepresentations and is "estopped from claiming clerical error."

## DISCUSSION

### I. Summary Judgment Standard

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

[4]On October 18, 2006, plaintiff wrote to Arlyn Kaster, Manager of Pension & Life Insurance Programs at Xerox regarding the amount of her lump sum retirement payment. Ms. Kaster responded on behalf of the Plan that the benefits had been calculated based on the provisions in the RIGP, which requires any employment terminated prior to January 1, 1976 to be ignored in calculating retirement benefits. Plaintiff appealed this determination to Lawrence Becker, the Plan Administrator. In denying the appeal, the Plan Administrator relied upon § 4.2 of the RIGP that talks about Retirement Benefits for Members who Terminate Employment or Retire on or After January 1, 1990. The Plan Administrator also noted that § 1.44(b) of the RIGP states that, in determining Years of Participation, "Periods of employment which terminate prior to January 1, 1976 shall be ignored."

is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir.1996)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)), cert denied, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. Anderson, 477 U.S. at 249; see also, Fed.R.Civ.P. 56(e)("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").

Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." Leon v. Murphy, 988 F.2d 303, 308 (2d Cir.1993).

**II. Plaintiff's Negligent Misrepresentation Claim As It Relates To Pension Benefits Is Preempted by ERISA.**

The plaintiff alleges a common law negligent misrepresentation claim in her Second Amended Complaint maintaining that "by reason of defendant's negligent misrepresentation, plaintiff has been damaged in the sum of $66,370.94 of her lump sum benefit." See Second Amended Complaint ("SAC"), ¶18. However, ERISA preempts state law regarding any matters that "relate to" employee benefit plans. See 29 U.S.C. §1144(a). Moreover, "ERISA ... sets forth a 'comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans.' This balancing 'would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress has rejected in ERISA." See Romney v. Lin, 94 F.3d 74, 80-81 (2d Cir. 1996), cert. denied, 522 U.S. 906 (1997)(citations and emphasis omitted), quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47-48 (1987).

Further, Section 514 of ERISA provides in relevant part that ERISA "supersede[s] any and all State laws insofar as they may now

or ever relate to any employee benefit plan described in .... this title ....” See 29 U.S.C. §1144(a). The Supreme Court has characterized the preemption provisions of ERISA as “deliberately expansive,” and noted that they were “designed ‘to establish pension plan regulation as exclusively a federal concern.’” See Pilot, 481 U.S. at 46 (citing Alessi v. Raybestos Manhattan, Inc., 451 U.S. 504, 523 (1981)). Given this broad scope, ERISA will preempt even general state laws that are not directed towards benefit plans in cases where those laws would have “a connection with or reference to” an ERISA plan. See Pilot, 481 U.S. at 47-48.

In numerous cases, courts have held that where state law claims of negligent misrepresentation “relate to” an employee benefit plan, ERISA preempts such claims. See Smith v. Dunham-Bush, Inc., 959 F.2d 6 (2d Cir. 1992); Carlo v. Reed Rolled Thread Die Company, 49 F.3d 790, 794 (1st Cir. 1995); Berger v. Edgewater Steel Co., 911 F.2d 911, 923 (3d Cir. 1990); Lee v. E.I. Du Pont de Nemours, 894 F.2d 755 (5th Cir. 1990); Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1275-76; (6th Cir. 1991); Pohl v. National Benefits Consultants, Inc., 956 F.2d 126 (7th Cir. 1992); Sandler v. Marconi Circuit Technology Corp., 814 F.Supp. 263, 265 (E.D.N.Y. 1993); Bernatowicz v. Colgate Palmolive, 785 F.Supp. 488, 493 (D.N.J. 1992); see also Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 288 (2d Cir.1992) (It is well-settled that “[a] state common law action which merely amounts to

an alternative theory of recovery for conduct actionable under ERISA is preempted"); Cefalu v. B.F. Goodrich Co., 871 F.2d 1290 (5th Cir. 1989)(holding that ERISA preempted a breach of contract claim based on plaintiff's allegation that defendant misrepresented terms of retirement plan).[5]

Plaintiff alleges that she was denied benefits because of the Defendants' misrepresentations regarding the inaccurate benefit statement estimates provided to her by Defendants. She seeks damages equal to the amount she claims she would have received under the RIGP based on estimates provided to her. See Carlo, 49 F.3d at 794 (finding that negligent misrepresentation claim was related to ERISA plan where damages sought by plaintiff ultimately depended on terms of benefit plan). Here, Aken's allegations clearly relate to an ERISA plan. Aken seeks payment of benefits accorded to her under the RIGP. Furthermore, it is undisputed that the Plan in question is governed by ERISA. See Kaster Affidavit ("Kaster Aff."), Ex. D. Thus, the state law claim for negligent misrepresentation is preempted by the ERISA claim and the Defendants' motion for summary judgment with respect to the negligent misrepresentation claim is granted.

[5]Although some courts have held that misrepresentation claims may not be preempted by ERISA, those cases involve claims that do not relate to the benefit plan itself, but instead relate to a separate issue such as an employee's employment status. See e.g. Hartle v. Packard Electric, 877 F.2d 354 (5th Cir. 1989) (ERISA does not preempt misrepresentation claim where alleged misrepresentation related to plaintiff's employment with defendant, and did not relate to terms of benefit plan).

**III. Standard of Review.**

When considering an ERISA claim such as this, the Court must first determine the appropriate standard of review to conduct its analysis. The Supreme Court has held that:

> "a denial of benefits challenged under [ERISA] § 1132(a)(1)(B)is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan."

See Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

Defendants argue that the decision of the Plan Administrator relating to the amount of plaintiff's pension retirement benefits is entitled to substantial deference from the Court, and may only be overturned if the determination is found to be arbitrary or capricious. See Defs. Br. at 12. Moreover, Defendants contend that courts in this Circuit have determined that language similar to the language in the RIGP vests the Plan Administrator with discretionary authority to interpret plan provisions. See Fuller v. J.P. Morgan Chase & Co., 423 F.3d 104, 107 (2d Cir. 2005); Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1271 (2d Cir. 1995). Further, Defendants claim that courts interpreting the RIGP itself have found that the RIGP vests the Plan Administrator with the discretionary authority to interpret plan provisions. See Montesano v. Xerox Corp. Ret. Income Guar. Plan, 256 F.3d 86 (2d Cir. 2001).

Pursuant to ERISA, where the Administrator of a plan is vested with the sole, discretionary authority to: (1) interpret the plan; (2) determine coverage and eligibility; and, (3) construe ambiguous provisions of the plan, the Administrator's decision to grant or deny benefits is entitled to substantial deference, and in most cases, may only be overturned if the decision is arbitrary or capricious. See Firestone, 489 U.S. at 115; Fuller, 423 F.3d at 106; Whitney v. Empire Blue Cross and Blue Shield, 106 F.3d 475, 477 (2d Cir. 1997); Sullivan v. LTV Aerospace and Defense Co., 82 F.3d 1251, 1255 (2d Cir. 1996).

Accordingly, if a plan grants the plan administrator discretionary authority to determine eligibility, the Second Circuit has held that the arbitrary and capricious standard of review will be applied. See Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 249-252 (2d Cir. 1999). Under the arbitrary and capricious standard, a denial of benefits "may be overturned only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law." Kinstler, 181 F.3d at 249, quoting Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995). Further, where a district court reviews a benefits determination under the arbitrary and capricious standard, it is limited to considering only the information available to the fiduciary at the time of the benefits determination in question. See Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d

Cir.1995).

In the instant case, the Plan Administrator is clearly vested with the discretion to determine eligibility for benefits provided under the plan. Specifically, Section 10.5 of the RIGP provides, in pertinent part:

> Authority of the Administrator. In the administration of the Plan the Administrator may, subject always to the requirements of Section 10.5 ... [c]onstrue the Plan and the Trust Agreement thereunder and resolve any ambiguity with respect thereto.

See Kaster Aff., Ex. D. Accordingly, I find that the RIGP sufficiently describes the scope of the Plan Administrator's Authority. Because the RIGP vests the Plan Administrator with the power to interpret its terms, I determine that an arbitrary and capricious standard of review is appropriate. See Celardo v. GNY Automobile Dealers Health & Welfare Trust, 318 F3d 142 (2d Cir. 2006) (Plan Administrator's interpretations of the plan's terms can be disturbed only if he interprets the plan in a manner inconsistent with its plain words and courts are not to substitute their own judgment for that of the decision-maker); O'Shea v. First Manhattan Co., 55 F.3d 109, 112 (2d Cir. 1995).

Thus, I conclude that the governing plan confers discretionary authority upon the Plan Administrator and the Defendants' decision relating to the amount of plaintiff's pension retirement benefits must be upheld unless it is shown to be arbitrary or capricious. See Firestone, 489 U.S. at 115. Under this deferential "arbitrary

and capricious" standard of review, the Plan Administrator's decision will be upheld if it is rational in light of the plan's provisions. See Kinstler, 181 F.3d at 249.

## IV. The Plan Administrator's Decision Denying Additional Pension Benefits to the Plaintiff Was Not Arbitrary and Capricious.

Under the arbitrary and capricious standard of review, a Plan Administrator's decision to deny benefits will not be overturned unless the decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." See Pagan, 52 F.3d at 442; Fuller, 423 F.3d at 107; see also, Darling v. E.I. DuPont De Nemours & Co., 952 F.Supp. 162, 165 (W.D.N.Y. 1997). To establish that a Plan Administrator's decision is supported by "substantial evidence," the administrator must demonstrate that the decision is supported by "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator] ...." See Celardo, 318 F.3d at 146. There must be more than a "scintilla" of evidence to support the Plan Administrator's decision, but there need not be a preponderance of the evidence, provided the evidence relied upon by the Plan Administrator is reliable. See id. (citing Miller, 72 F.3d at 1072.)

In the instant case, I find that the Plan Administrator's decision was supported by the substantial evidence in the record, and accordingly was neither arbitrary nor capricious. The plain language of the RIGP supports the Plan Administrator's method of

calculating plaintiff's years of service, and as such the determination of the amount of plaintiff's pension retirement benefits. Moreover, the RIGP unambiguously defines how service terminating prior to January 1, 1976 is to be treated for the purpose of calculating retirement benefits. § 4.2 of the RIGP further deals with Retirement Benefits for Members Who Terminate Employment or Retire on or After January 1, 1990. See Kaser Aff., Ex. D. In addition, the formula for retirement benefits is defined in Section 4.2(a) as "one and four-tenths percent of Average Monthly Compensation of the Member multiplied by the number of full and fractional years of Participation up to thirty." See id. The term "Years of Participation" is defined in § 1.44 of the RIGP, which provides in pertinent part that [p]eriods of employment which terminated prior to January 1, 1976 shall be ignored" when determining the "Years of Participation" for the purposes of calculating retirement benefits. See id.

As set forth in the denial letter, the Plan Administrator relied on the above provisions in denying plaintiff's appeal. Further, there is no dispute that the RIGP caps the years of service for Xerox employees at 30 years. Accordingly, the Plan Administrator's decision is fully supported by the terms in the RIGP and its SPD. Thus, the record shows that plaintiff was paid all of the pension benefits to which she was entitled under the RIGP and as such any ERISA claim for additional pension benefits is

dismissed.

**V. Plaintiff has failed to establish the necessary elements of an estoppel claim under ERISA and plaintiff's claim for pension benefits is dismissed.**

To succeed on a claim for promissory estoppel under ERISA, plaintiff must satisfy four elements: "(1) a promise, (2)reliance on the promise, (3)injury caused by the reliance, and (4) an injustice if the promise is not enforced." Schonholz v. Long Island Jewish Med. Ctr., 87 F.3d 72, 79 (2d 1996). In addition, a plaintiff must adduce "facts sufficient to satisfy an extraordinary circumstances requirement." Id. I find that plaintiff has failed to establish the elements of promissory estoppel under ERISA and failed to establish the existence of "extraordinary circumstances," therefore plaintiff's claim for pension benefits is dismissed.

Plaintiff has failed to show evidence of a promise that went unfulfilled. Plaintiff was provided with a copy of the SPD, which expressly informed her of the manner in which her formula benefit would be calculated, including a clause which stated that if she had terminated her employment prior to 1976, those years would not be considered in determining her years of service. In addition, it was also clearly stated in the SPD that employees can only be given credit for up to 30 years of service. Accordingly, plaintiff received a lump sum pension benefit based on 27 years of service, which properly excluded plaintiff's service prior to 1976.

It is well established that benefit statements labeled with

disclaimers which clearly indicate that they are only estimates do not create a promise in the context of an ERISA estoppel claim and therefore, plaintiff's reliance on the estimates generated on the Hewitt Associate's website is misplaced. See Perreca v. Gluck, 295 F.3d 215, 225-26 (2d Cir. 2002). Plaintiff's printouts from the Hewitt Associate's website were clearly labeled "estimate" in bold face type. In addition, they also explained stated on them that there may be changes in factors such as "pension payment start date" that would affect the ultimate benefit received.

Plaintiff has failed to demonstrate that she relied on these estimates of her pension benefits to her detriment. Given that plaintiff received a copy of the SPD, she knew or should have known that the estimates were incorrect since they obviously were in conflict with two provisions of the SPD. First, the estimates credited the plaintiff with five years of service that terminated prior to 1976, despite the fact that the SPD clearly excludes such periods of service from calculation. Second, the estimates stated that plaintiff's benefit was based on 32 years of service, despite the fact that the SPD provided that employees may only receive credit for a maximum of 30 years of service. Given these errors, the plaintiff could not have reasonably relied on the estimates to her detriment.

Furthermore, plaintiff has failed to set forth any fact that would constitute "extraordinary circumstance." It is well

established law that a mere mistake in calculating benefits typically does not constitute "extraordinary circumstances." See Bell v. Pfizer, Inc. Stock and Incentive Plan, 499 F. Supp. 2d 404, 409-410 (S.D.N.Y. 2007). Accordingly, plaintiff's situation does not constitute "extraordinary circumstances" since Xerox did not intentionally provide an incorrect estimate of benefits for the purpose of inducing the plaintiff to retire, but rather "mistakenly calculated" plaintiff's benefits "based on misinformation." See Hart v. Equitable Life Assurance Soc., 2002 WL 31682383 at *5 (S.D.N.Y. 2002).

**VI. Claims Against The Corporate Employer**

The Defendants also argue that Xerox as the corporate employer is not a proper defendant in this action. See Defs. Br. at 16. In this Circuit, it is well-established that "[i]n a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." See Crocco v. Xerox Corp., 137 F.3d 105, 107 (2d Cir.1998), quoting Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir.1989); see also Walsh v. Eastman Kodak Co., 53 F.Supp.2d 569, 574 (W.D.N.Y.1999) (dismissing plaintiff's ERISA claim against employer); Muller v. First Unum Life Ins. Co., 23 F.Supp.2d 231 (N.D.N.Y.1998) (denying plaintiff's motion to amend complaint to add ERISA claim against employer); Brannon v. Tarlov, 986 F.Supp. 146, 152 (E.D.N.Y.1997) ("[t]he plan participant's employer is not

a proper party defendant [under § 502(a)(1)(B)]”), aff'd, 164 F.3d 617 (2d Cir.1998). It is undisputed that Xerox is not itself named as a plan administrator on the RIGP and Xerox does not serve as the plan administrator. In light of these facts, the Court agrees with Xerox that plaintiff cannot maintain any of her actions in a recovery of benefits claim against Xerox as the corporate employer. See Crocco, 137 F.3d at 107 (holding that an employer not named as a plan administrator may not be liable "as a de facto co-administrator [] in a suit brought under § 502(a)(1)(B), where the employer has designated a plan administrator in accordance with 29 U.S.C. § 1002(16)(A)").[6] The Court therefore grants Defendants' Motion for Summary Judgment dismissing all claims against Xerox since it is not a proper party.

**VII. Plaintiff's claim for salary continuation benefits is precluded.**

To succeed on a claim of negligent misrepresentation under New York law, a plaintiff must first establish that a defendant has a duty to give correct information to the plaintiff. Russell v. Crossland Sav. Bank, 111 F.3d 251, 257 (2d Cir. 1997). Next a plaintiff must be able to show that the defendant knew: (1) that the information was desired by plaintiff for a serious purpose, (2) that the plaintiff intended to rely and act upon it, and (3) that,

[6] In Crocco, the Second Circuit rejected the argument advanced by plaintiff that where there is a named administrator, another entity may also be liable under § 1132(a)(1)(B) as a "de facto" or unnamed administrator based on the performance of ministerial functions. See id. (citing Lee v. Burkhart, 991 F.2d 1004 (2d Cir.1993)).

if false or erroneous, he or she would because of it be injured in person or property. Id. I find that plaintiff has failed to make out the necessary elements of a negligent misrepresentation claim, therefore her claim for salary continuation benefits is dismissed.

In accordance with Xerox's policy, plaintiff's initial period of service from November 1970 to January 1975 was properly excluded in the calculation of her years of service for the purposes of salary continuance. While plaintiff claims that she is entitled to 52 weeks of salary continuance, at no point was she informed that she would be receiving salary continuance for that period of time. Plaintiff was properly provided 40.5 weeks of salary continuance, based upon her 27 years of service. Furthermore, plaintiff has failed to demonstrate any reasonable reliance to recover for negligent misrepresentation. Plaintiff does not allege that anyone at Xerox promised her 52 weeks of salary continuance or that her service credit would include her pre-1976 years of service.

In addition to failing to make out a claim for negligent misrepresentation, plaintiff is also precluded from bringing any claim for additional salary continuation benefits because she knowingly and voluntarily signed a general release of claims in exchange for these benefits. In determining if an individual knowingly and voluntarily waived her rights the Second Circuit has considered factors such as the amount of time the plaintiff had possession of or access to the agreement before signing it, the

clarity of the agreement, whether the employer urged the plaintiff to consult with an attorney and if they were given a fair opportunity to do so, and if the plaintiff received adequate consideration. See Finz v. Schlesinger, 957 F.2d 78, 82 (2d Cir. 1992).

Considering these factors, I find that the plaintiff did knowingly and voluntarily sign the release. The plaintiff had adequate time to review the release, as she was given 45 days to consider the terms before she had to return the release. See Farrell v. Title Associates, Inc., 2004 WL 5131862 at *6 (S.D.N.Y. 2004) (11 day review period sufficient). The terms of the release agreement were clearly set forth, as the release stated "I understand and agree that this release waives all claims that I may have at the time I sign it, including claims I do not then know about or suspect." See Nicholas v. NYNEX, Inc., 929 F. Supp. 727, 731 (S.D.N.Y. 1996); see also Benson v. NYNEX, Inc., 2001 WL 579786 at *1 (S.D.N.Y. 2001) (finding release was drafted in clear, unambiguous language where it included "[i]n consideration of the benefits provided for in this Agreements, I intend to give up any rights I may have under [employment laws]...").

In addition, plaintiff was given ample time to consult with an attorney and was advised to do so before signing the release. See Bachiller v. Turn on Products, Inc., 2003 WL 187416 at *4 (S.D.N.Y.2003) (finding release was entered into knowingly and

voluntarily where “[t]he Notice accompanying the release clearly advises plaintiff of her right to consult an attorney and plaintiff does not allege that defendants discouraged her from obtaining an attorney”). Furthermore, plaintiff received adequate consideration in exchange for agreeing to the release, in the form of 40.5 weeks of salary continuance. Thus, plaintiff’s claim for salary continuation benefits is precluded and Defendant’s motion for summary judgment is granted.

## CONCLUSION

For the reasons set forth above, Defendants’ motion for summary judgment pursuant to Federal Rules of Civil Procedure 56 is granted and plaintiff’s Second Amended Complaint is dismissed in its entirety with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated: Rochester, New York
July 22, 2008